Brian P. Brosnahan (State Bar No. 112984)
Email:  bbrosnahan@kasowitz.com
Jacob N. Foster (State Bar No. 250785)
Email:  jfoster@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California  94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

Attorneys for Plaintiff
CARLOS ANTHONY HAWTHORNE II

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ANTHONY HAWTHORNE II, <br><br> Plaintiff, <br><br> v. <br><br> R. AYERS, JR.; A. COTA; R.W. FOX; J. PICKETT; D. LEE; T. HOLT; S. ROBINSON; R. CRUZ; and DOES 1-50, <br><br> Defendants. | Case No: C 08-1473-WHA (PR) <br><br> **STIPULATION AND ORDER** <br><br> Action Filed:  November 17, 2008 |

WHEREAS, on August 11, 2011, the Court granted Plaintiff up to and including September 30, 2011, to move for leave to file an amended complaint or to add new parties;

WHEREAS, Plaintiff proposes to file the Third Amended Complaint, a copy of which is attached hereto as Exhibit 1, and Defendants have stipulated to its filing pursuant to Federal Rule of Civil Procedure 15(a)(2);

WHEREAS, the parties reached agreement on the terms of a stipulation and proposed order for the filing of the proposed Third Amended Complaint, which are set forth below;

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel for the parties:

1. Plaintiffs may file their proposed Third Amended Complaint.
2. Defendants waive no defenses that they may have to the claims of Plaintiff.

Dated: September 30, 2011      By: /s/ Brian Brosnahan
                                    KASOWITZ BENSON TORRES & FRIEDMAN LLP

*Attorneys for Plaintiff Carlos A. Hawthorne*

Dated: September 30, 2011      By: /s/ Michael J, Quinn

*Attorneys for Defendants Fox, Cruz, Pickett, Holt, Lee, Robinson, and Cota*

PURSUANT TO STIPULATION, IT IS SO ORDERED:

Dated: September __, 2011

_____
Hon. William Alsup, U.S.D.J.

# EXHIBIT 1

1  Brian P. Brosnahan (State Bar No. 112984)
   Email:  bbrosnahan@kasowitz.com
2  Jacob N. Foster (State Bar No. 250785)
   Email:  jfoster@kasowitz.com
3  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
   101 California Street, Suite 2300
4  San Francisco, California  94111
   Telephone:  (415) 421-6140
5  Facsimile:  (415) 398-5030

6  Attorneys for Plaintiff
   CARLOS ANTHONY HAWTHORNE II
7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ANTHONY HAWTHORNE II, | Case No: C 08-1473-WHA (PR) |
| Plaintiff, | **THIRD AMENDED COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| R. AYERS, JR.; A. COTA; R.W. FOX; J. PICKETT; D. LEE; T. HOLT; S. ROBINSON; R. CRUZ; and DOES 1-50, | Action Filed:  November 17, 2008 |
| Defendants. | |

Third Amended Complaint; Case No. C 08-1473-WHA (PR)

Plaintiff Carlos Anthony Hawthorne III ("Plaintiff") by and through his undersigned attorneys, alleges, upon knowledge as to his own acts and otherwise upon information and belief, as follows:

## OVERVIEW

1. This action seeks to redress the racial discrimination of defendants A. Cota, R.W. Fox, J. Pickett, D. Lee, T. Holt, S. Robinson, and R. Cruz ("Defendants") in their assignment of Plaintiff to certain exercise yards at San Quentin State Prison ("SQSP"). On February 1, 2007, Defendants comprised SQSP's Institutional Classification Committee ("ICC"), which determined the prison yard where Plaintiff would exercise. Though Plaintiff requested, and was otherwise qualified for, Exercise Yard No.1, where he had previously been assigned, Defendants denied the request because Plaintiff is African-American. As a result of Defendants' unconstitutional discrimination, Plaintiff was forced to engage in "walk-alone" exercise with no running water, toilets, or protection from weather conditions during exercise.

2. SQSP is the oldest prison in California. Condemned prisoners at SQSP are classified either as Grade A (inmates without a high violence or escape potential) or Grade B (inmates with a high escape or violence potential or who otherwise constitute a serious disciplinary case). Grade A prisoners exercise on "Reintegrated Mix" exercise yards, while Grade B prisoners exercise on segregated or walk alone exercise yards. SQSP's Unit Classification Committee ("UCC") determines whether prisoners should be classified as Grade A or Grade B, while the ICC assigns prisoners to specific Grade A or Grade B exercise yards.

3. Defendants were members of the ICC who engaged in the unconstitutional use of race in determining Plaintiff's Grade A exercise yard assignment. Defendants' acts of racial discrimination included their refusal to assign Plaintiff to Exercise Yard No. 1 because he is African-American. At the February 1, 2007 ICC meeting, Defendant Fox stated that "I need to break this yard [Yard No. 1] up because it's too many blacks out there, so I'd like to see you on Yard No. 5, that's my recommendation." Defendants Cota, Pickett, Lee, Holt, Robinson, and Cruz agreed with defendant Fox. Defendants decided to deny Plaintiff's request for Exercise Yard No. 1 and assign him to Exercise Yard No. 5 (or an individual walk alone yard, if Plaintiff

1  declined to program on Exercise Yard No. 5) on the basis of race.

2      4.    In perpetrating their unlawful use of race in exercise yard assignment decisions, Defendants disregarded and violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which requires that any use of racial classification in prisons be narrowly tailored to achieve a compelling state interest. Defendants cannot establish any need to consider Plaintiff's race in assigning him to an appropriate exercise yard, much less show that their racially discriminatory decision was the least restrictive alternative.

## JURISDICTION AND VENUE

5.    Jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

6.    Venue is appropriate in the Northern District of California under 28 U.S.C. § 1391(b) and Civil Local Rule 3-2(c) because a substantial part of the events giving rise to the claim occurred in this district.

## THE PARTIES

7.    Plaintiff Carlos Anthony Hawthorne II is a prisoner at San Quentin State Prison. Plaintiff suffered deprivations of his Fourteenth Amendment rights as a result of Defendants' discriminatory acts as described herein.

8.    Defendant A. Cota was an employee of at San Quentin State Prison and responsible for deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

9.    Defendant R.W. Fox was a Captain at San Quentin State Prison and responsible for deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

10.    Defendant J. Pickett was a Facility Captain at San Quentin State Prison and responsible for deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

11.    Defendant D. Lee was an employee of at San Quentin State Prison and responsible for deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

12.    Defendant T. Holt was an employee of at San Quentin State Prison and responsible for deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

13.    Defendant S. Robinson was an employee of at San Quentin State Prison and responsible for deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

14. Defendant R. Cruz was an employee of at San Quentin State Prison and responsible for deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

15. Plaintiffs are currently unaware of the identities of Does 1 through 50, who were the agents of Defendants or who conspired with Defendants to commit the deprivations of Plaintiff's Fourteenth Amendment rights as described herein.

## DEFENDANTS' RACIAL DISCRIMINATION IN EXERCISE YARD ASSIGNMENT

16. Defendants were employees of San Quentin State Prison and members of the ICC. As members of the ICC, Defendants were responsible for determining Plaintiff's exercise yard program on February 1, 2007.

17. The ICC is generally responsible for reviewing prisoners' "program," including the prison exercise yard where they will exercise. The ICC is required to inform the prisoner of the purpose of the hearing, encourage the prisoner's participation in the hearing, and make decisions based on evaluation of available information and mutual agreement of the committee members. The ICC is required to inform the prisoner of its decision.

18. The Department of Correction and Rehabilitation Operations Manual imposes detailed requirements governing the decisions made by the ICC. The ICC is required to prepare a recording of the hearing on a CDC Form 128G. The Form 128G must contain "[t]he specific reason(s) for the action(s) including the information upon which the decision was based." After the Form 128G is prepared, a copy must be issued to the prisoner.

19. On February 1, 2007, Defendants constituted the ICC and expressly discriminated against Plaintiff on the basis of his race. The corrected ICC Form 128G openly acknowledges that the decision to assign Plaintiff to a certain exercise yard was made pursuant to a purported need "to balance the *ethnic* and size structures" of the yards (emphasis added). The result of the ICC's desire to manage the exercise yard population by ethnicity was that Plaintiff was denied the opportunity to program on Exercise Yard No. 1 and assigned to walk alone exercise on the basis of his race.

20. In order to implement their racially discriminatory policy of balancing the ethnic

composition of the exercise yards, Defendants assigned Plaintiff to a certain exercise yard based on his membership in one of the following racial categories: "Black," "White," "Latino," and "Other." Plaintiff's racial identity as a "Black" prisoner is noted on myriad paperwork used by Defendants.

21. When Defendants met with Plaintiff to determine his exercise yard assignment, Plaintiff was classified as a "Grade A" prisoner and eligible to be assigned to any Grade A Exercise Yard. Plaintiff requested that the ICC assign him to Grade A Exercise Yard No. 1, a yard conducive to his educational pursuits and religious studies. Plaintiff had previously programmed on Exercise Yard No. 1 for numerous years and the ICC had no legitimate penological basis for denying Plaintiff's request.

22. Through their unconstitutional acts and practices, Defendants denied Plaintiffs' requested assignment to Exercise Yard No. 1. Specifically, Defendants informed Plaintiff during the ICC hearing that they would not assign him to Exercise Yard No. 1 because Plaintiff is African-American. For example, Defendant Fox stated that "I need to break this yard [Yard No. 1] up because it's too many blacks out there, so I'd like to see you on Yard No. 5, that's my recommendation." The other Defendants agreed with Defendant Fox.

23. Defendant's unconstitutional acts and practices not only interfered with Plaintiff's educational and religious pursuits, but threatened his physical safety. In addition to refusing to assign Plaintiff to Exercise Yard No. 1, Defendants sought to assign Plaintiff to Exercise Yard No. 5 on the basis of race. Exercise Yard No. 5 is for inmates who are not compatible with prisoners on other yards, including inmates assigned to "protective custody" or with "special needs." If Plaintiff had programmed on Exercise Yard No. 5 pursuant to the Defendants' recommendation, it would have created a perception among other prisoners that Plaintiff required "protective custody." Such a perception would have threatened Plaintiff's safety and security.

24. In response to Plaintiff's refusal to risk his safety by programming on Exercise Yard No. 5, Defendants provided Plaintiff with the purported choice of programming on Exercise Yard No. 5 or not being allowed to program on a group exercise yard at all. Defendants' assignment of Plaintiff to individual walk alone exercise effectively deprived him of the

programming benefits of Grade A status. Walk alone exercise is for individuals who are not allowed to program with other inmates and lacks the benefits and facilities of the group exercise yards. Walk alone exercise takes place in a small contained area, with limited exercise yard equipment. Prisoners who are assigned to walk alone exercise yards are exposed to the natural elements and have no protection from adverse weather conditions. There are no bathrooms or showers available on the walk alone exercise yards, with desultory consequences for health and sanitation.

25. The worse conditions that Plaintiff suffered as a result of being denied assignment to Exercise Yard No. 1 and placed on walk alone exercise undermined his psychological and physical well being. Exercise is one of life's basic necessities and particularly critical when continuously confined in a prison environment. Plaintiff also suffered from severe humiliation as a result of being segregated and punished solely on account of his race.

26. No legitimate penological purpose supported Defendants' refusal to assign Plaintiff to Exercise Yard No. 1. Plaintiff was classified as a Grade A prisoner and qualified to program on Exercise Yard No. 1 pursuant to Defendants' rules and regulations. Plaintiff had also previously programmed on Exercise Yard No. 1 for numerous years and the ICC had approved Plaintiff's assignment to Exercise Yard No. 1 during those years to enable Plaintiff's religious and educational pursuits. Indeed, both the original and correct Form 128G for the February 1, 2007 hearing acknowledge that "[a]fter careful review and consideration" of Plaintiff's file, the ICC determined that Plaintiff was "programming positively" and had "no documented gang activity that would impact Exercise Yard placement."

27. Lacking any legitimate penological purpose for refusing to assign Plaintiff to Exercise Yard No. 1, Defendants initially attempted to cover up their unconstitutional race based discrimination by creating a false recording of the February 1, 2007 hearing on the Form 128G. Instead of accurately recording the specific racial basis for their action, Defendants falsely claimed on the Form 128G that the ICC did not assign Plaintiff to Exercise Yard No. 1 because Plaintiff allegedly "refused to program on any other yard" during the February 1 hearing. Upon receiving the Form 128G, Plaintiff filed an administrative appeal requesting correction of this inaccuracy,

and SQSP Warden Ayers ordered the correction of the Form 128G. Warden Ayers found that the "documentation and arguments presented [were] persuasive that [Plaintiff] has supported his appeal with sufficient evidence or facts to warrant a modification of the ICC chrono dated February 1, 2007" because Plaintiff never refused to program on other exercise yards and stated at the hearing that he could program successfully on any yard.

28. Thus, although the Defendants initially attempted to cover up their unconstitutional acts of discrimination, the Form 128G was ultimately corrected to acknowledge that Plaintiff's request for Exercise Yard No. 1 was in fact denied "based on the premise of recomposing the yard compositions to balance the ethnic and size structures" of the exercise yards. The corrected Form 128G clearly states that Plaintiff was eligible for Exercise Yard No. 1, but was denied placement on Exercise Yard No. 1 and assigned to walk alone exercise because of his race.

## CAUSE OF ACTION
### 14 U.S.C. § 1983

29. Plaintiff refers to and incorporates the previous numbered paragraphs as if fully set forth herein.

30. Defendants implemented, ratified, and approved the assignment of Plaintiff to exercise yards in a manner that intentionally discriminates against Plaintiff based in substantial part on his race, ethnicity, ancestry, or color. In so doing, Defendants have violated Plaintiffs' right to the equal protection of the laws as provided by the Fourteenth Amendment to the United States Constitution and are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

31. The conduct described herein was unnecessary, unreasonable, excessive, deliberate, and is the proximate cause of the deprivation of Plaintiff's constitutional rights.

32. The aforementioned acts of Defendants caused Plaintiff to suffer physical and emotional injury, were humiliating and antithetical to human dignity, deprived Plaintiff of the minimal civilized measures of life's necessities, and were done with deliberate indifference to and callous disregard for Plaintiff's rights.

33. Plaintiff is entitled to recover nominal, compensatory, and punitive damages, and pre-and post-judgment interest, against the individual named Defendants.

34.     Plaintiff is entitled to reasonable attorneys' fees, litigation expenses and costs for maintaining this claim pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, as follows:

A.     For incidental, compensatory, and punitive damages against Defendants based on their unconstitutional acts of discrimination as alleged herein;

B.     For declaratory relief regarding the unconstitutional acts of discrimination, including a declaration that the acts described above were in violation of the Fourteenth Amendment.

C.     For reasonable attorneys' fees, and all costs, expenses and disbursements, including, without limitation, filing fees and reasonable costs of suit, including, but not limited to an award of attorneys' fees, costs, expenses and disbursements under 42 U.S.C. § 1988.

D.     For such other and further relief as this Court deems just and proper.

DATED: September 30, 2011

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP


By:     /s/ Brian Brosnahan
        Brian P. Brosnahan
        Attorneys for Plaintiff
        CARLOS ANTHONY HAWTHORNE II

**DEMAND FOR JURY TRIAL**

Plaintiffs CARLOS ANTHONY HAWTHORNE II demands a trial by jury of all issues that may be so tried as of right.

DATED: September 30, 2011

                    KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

                    By:     /s/ Brian Brosnahan
                           Brian P. Brosnahan
                    Attorneys for Plaintiff
                    CARLOS ANTHONY HAWTHORNE II