IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLOS A. HAWTHORNE, II,

    Plaintiff,

  v.

R. AYERS, JR., et al.,

    Defendants.
                                /

No. C 08-01473 WHA

**ORDER DENYING MOTION TO DISMISS**

## INTRODUCTION

In this civil rights action filed by a state prisoner, defendants move to dismiss plaintiff's request for incidental, compensatory, and punitive damages against them. For the reasons stated below, the motion is **DENIED**.

## STATEMENT

Plaintiff Carlos A. Hawthorne, is an inmate at San Quentin State Prison ("SQSP"). On February 1, 2007, defendants A. Cota, R.W. Fox, J. Pickett, D. Lee, T. Holt, S. Robinson, and R. Cruz, comprised SQSP's Institutional Classification Committee ("ICC"), which determined the prison yard where plaintiff would be permitted to exercise (Third Amd. Compl. ¶ 1). Mr. Hawthorne brings a Section 1983 claim against defendants based on alleged racial discrimination in violation of his right to equal protection of the laws under the Fourteenth Amendment.

On a motion to dismiss, the well-pled allegations of the operative complaint must be taken as true. On February 1, 2007, Mr. Hawthorne appeared before the ICC for a review of his

program, including the prison yard where he would exercise (*id.* at ¶¶ 16, 19, 21). At that time, Mr. Hawthorne was classified as a "Grade A" inmate, which is an inmate without a high violence or escape potential. As a "Grade A" inmate, he was eligible to exercise in a "reintegrated mix" exercise yard (*id.* at ¶¶ 2, 21). During the ICC review on February 1, Mr. Hawthorne requested "Grade A" exercise yard number one, to which he had previously been assigned for a number of years, and which would be conducive to his education and religious studies (*id.* at ¶ 21). Defendant Fox denied Mr. Hawthorne's request "because it's too many blacks out there" (*id.* at ¶ 22). Instead, Mr. Hawthorne was asked to choose between assignment to either a "walk alone" exercise yard or yard number five, which is for inmates "who are not compatible with prisoners in other yards," including inmates who are assigned to "protective custody" or "with special needs." Mr. Hawthorne opted against yard number five due to the "safety and security" concerns of being perceived as an inmate not welcome in other yards. Thus, he was assigned to a "walk alone" exercise yard, which involved worse conditions than the group exercise yard, such as no running water, no bathrooms, and no protection from rain during exercise (*id.* at ¶¶ 1, 23, 24). No penological purpose supported defendants refusal to assign Mr. Hawthorne to yard number one (*id.* at ¶ 26).

The ICC is required to prepare a recording of its hearings on a Form 128G. The Form 128G "must contain the specific reasons for the actions including the information upon which the decision was based," and a copy must be issued to the inmate (*id.* at ¶ 18). On the Form 128G regarding Mr. Hawthorne's yard assignment, defendants claimed that Mr. Hawthorne was not assigned to yard number one because he "refused to program on any other yard." Upon receiving the Form 128G, Mr. Hawthorne filed an administrative appeal requesting a correction of the stated reason for which he was denied assignment to yard number one. Defendant Ayers, warden of SQSP, ordered correction of the Form 128G, finding that "plaintiff ha[d] supported his appeal with sufficient evidence or facts to warrant modification of the ICC chrono dated February 1, 2007" because Mr. Hawthorne had never refused to program on other exercise yards (*id.* at ¶ 27). The form was corrected to acknowledge that Mr. Hawthorne's request for assignment to yard

number one was denied based on "the premise of recomposing the yard compositions to balance the ethnic and size structures of the exercise yards" (*id.* at ¶ 28).

This case has a long procedural history, which is relevant to the instant motion. On March 17, 2008, proceeding *pro se*, Mr. Hawthorne filed a civil rights complaint under Section 1983, naming defendants in their individual and official capacities, and seeking $10,000 in compensatory damages and $10,000 in punitive damages against each defendant (Dkt. No. 1). The complaint was screened and dismissed with leave to amend as to the claims for which Mr. Hawthorne sought damages (Dkt. No. 14).

Mr. Hawthorne, still proceeding *pro se*, filed an amended complaint on November 17, 2008, seeking to "remove all San Quentin officials from any and all decision-making procedures and/or practices" and to replace them with a "fair and impartial interim committee," and $10,000 in compensatory damages and $10,000 in punitive damages against each named defendant (Dkt. No. 17 at 3–4, 6). In the order of service dated December 15, 2008, the amended complaint was found to have pled allegations sufficient to state an equal protection claim (Dkt. No. 19). By order dated September 1, 2009, defendants' motion to dismiss the amended complaint was denied, finding Mr. Hawthorne had exhausted his equal protection claim (Dkt. No. 35).

On September 2, 2010, defendants' motion for summary judgment was granted as to the claims against defendant Ayers and denied as to the claims against defendants A. Cota, R.W. Fox, J. Pickett, D. Lee, T. Holt, S. Robinson, and R. Cruz (Dkt. No. 61). That same order dismissed the amended complaint with leave to amend.

Mr. Hawthorne filed a second amended complaint on September 30, 2010, seeking injunctive and declaratory relief and adding new defendants and new claims (Dkt. No. 63). Only Mr. Hawthorne's claim for the violation of the equal protection clause against defendants survived. The new defendants and new claims added to the seconded amended complaint were dismissed because Mr. Hawthorne was not granted leave to make such amendments (Dkt. No. 66). Mr. Hawthorne did not request damages as to the equal protection claim, though the complaint did name defendants in their individual and official capacities.

On May 3, 2011, the proceedings were stayed and the action was referred for appointment of *pro bono* counsel (Dkt. No. 75). Counsel was appointed on June 2, 2011, and the stay was lifted (Dkt. Nos. 76, 79). The parties stipulated to the filing of the operative third amended complaint, which was filed October 7 (Dkt. Nos. 83, 84). The operative complaint seeks damages and declaratory relief based on defendants' alleged violations of Mr. Hawthorne's right to equal protection of the laws under the Fourteenth Amendment (Dkt. No. 84).

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Defendants argue that the request for damages is tantamount to asserting new claims against them. Thus, defendants move under Rule 12(b)(6), to dismiss the request for incidental, compensatory, and punitive damages and the alleged new claims against defendants in their individual capacities on the ground that they are time-barred and that the alleged new claims do not relate-back to the initial complaint.

**1. STATUTE OF LIMITATIONS.**

The order first determines the relevant statute of limitations period. The statute of limitations period in Section 1983 actions is governed by state law. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). Our court of appeals has characterized Section 1983 actions as actions for injuries to personal rights, and as such, courts borrow the statute of limitations period that applies to personal-injury actions. *Ibid*. In California, pursuant to California Civil Procedure Code Section 335.1, that statue of limitations is two years.

4

Federal law determines when the statute of limitations begins to run. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1998). Accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Ibid.* Here, both defendants and plaintiff agree that Mr. Hawthorne's action accrued in April 2007, when he initiated his administrative appeal concerning his yard assignment. Thus, the statute of limitations period expired in April 2009. Both the initial and amended complaint were filed before April 2009.

### 2. TIMELY NOTICE.

Defendants contend that Mr. Hawthorne's request for damages is tantamount to alleging new claims against defendants in their individual capacities, and is thus time-barred (Br. 3–4). Mr. Hawthorne responds that the request for damages is not a new claim, and that the allegations and claims for relief pled in his initial and amended complaint provided defendants with sufficient notice, prior to the expiration of the statute of limitations period, that he sought to sue defendants in their individual capacities and obtain damages as one form of relief. The order agrees.

The Rule 8 pleading standard requires that a complaint must only provide a "plausible short and plain statement of the plaintiff's claim" and need "not [be] a model of the careful drafter's art or "pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). The Rule 8 pleading standards should be "liberally construed" for claims brought *pro se* because "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Here, Mr. Hawthorne timely alleged his equal protection claim against defendants seeking relief for damages, and he even named them in their individual and official capacities in his initial complaint. The initial complaint stated that "[t]he plaintiff is also seeking $10,000 dollars in compensatory damages against each defendant, jointly and severally. Punitive damages in the amount of $10,000 against each defendant" (Dkt. No. 1 at 6). Although the initial complaint was dismissed after being screened, plaintiff's amended complaint again timely alleged a claim for which Mr. Hawthorne sought damages.

5

The amended complaint stated that "[t]he Plaintiff is also seeking $10,000 dollars in compensatory damages against each defendant, jointly and severally," and "punitive damages in the amount of $10,000 against each defendant" (Dkt. No. 17 at 6). Defendants were served the amended complaint. Although the amended complaint did not explicitly name plaintiffs in their individual or official capacities, it clearly indicated that plaintiff sought damages against each defendant. Given that in Section 1983 actions damages can only be sought against defendants named in their individual capacities, defendants were put on notice that they were being sued in their individual capacities, even if, such notice was not as "carefully crafted" as it would have been had the pleading been crafted by an attorney. Defendants' argument on reply that the Court never acknowledged Mr. Hawthorne's claims for damages in the amended complaint is of no consequence, as the Court need not "acknowledge" claims for damages in order for them to be valid.

Defendants are not now prejudiced by the fact that Mr. Hawthorne did not explicitly request damages in the second amended complaint because prior complaints had put them on notice that plaintiff was seeking damages. Moreover, the second amended complaint named defendants in their individual and official capacities. Prior to the filing of the third amended complaint, discovery had not yet been conducted. And defendants have already raised the defense of qualified immunity in their summary judgment briefing, which is a defense that is only available in a suit against an individual in his individual capacity. Thus, the request for damages will not likely require preparation of new defenses.

Once Mr. Hawthorne obtained *pro bono* counsel, counsel immediately filed a third amended complaint seeking damages, just as plaintiff proceeding *pro se* had done in his initial and amended complaint. The opposition to the motion to dismiss indicates that Mr. Hawthorne omitted the request for damages in his second amended complaint because in misunderstanding a previous order, he thought his prior request for damages relief was viewed by the Court as a request for an inappropriate form of relief (Opp. 7). This is understandable in this case.

Within the statute of limitations period, Mr. Hawthorne provided defendants with sufficient notice that he intended to sue them in their individual and official capacities and request

6

damages as one form of relief for their alleged violations of his right to equal protection of the laws under the Fourteenth Amendment. Thus, the order need not consider whether the claim against defendants in their individual capacities and request for damages relates back to the initial complaint.

## CONCLUSION

For the foregoing reasons, defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 27, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE